**[Cite as *Toledo v. Gaines*, 2026-Ohio-1929.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

Appellee

v.

Magic EH Gaines

Appellant

Court of Appeals No. L-25-00165

Trial Court No. CRB-24-01197

**DECISION AND JUDGMENT**

Decided: May 26, 2026

\* \* \* \* \*

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

\* \* \* \* \*

**SULEK, J.**

{¶ 1} Appellant Magic Gaines appeals the judgment of the Toledo Municipal Court, which found her guilty of one count of disrupting school activity and one count of criminal trespass and sentenced her to pay court costs. For the reasons that follow, the trial court's judgment is affirmed.

### I. Factual Background and Procedural History

{¶ 2} On February 9, 2024, Gaines was charged by complaint with one count of disrupting school activity in violation of Toledo Municipal Code 537.16, a misdemeanor of the first degree, and one count of criminal trespass in violation

of R.C. 2911.21(A)(2), a misdemeanor of the fourth degree. The charges stemmed from her conduct on February 1, 2024, where she allegedly came onto the premises of Skyway Academy, tried to get past security, pounded on the door and cursed at staff, said she would "beat [the staff member's] ass," and then knowingly remained on the property after she was told to leave.

{¶ 3} Gaines pleaded not guilty, and the matter proceeded to a bench trial.

{¶ 4} The City first called Jalen Phelps, who was the security officer for Skyway Career Preparatory High School. Phelps testified that on February 1, 2024, he heard Gaines's son, Z.G., talking on his cell phone in the bathroom. The school had a policy that students were not allowed to have cell phones in the building. Phelps, therefore, confronted Z.G. and walked him to the office of Willie Eaton, the assistant principal. Phelps testified that Z.G. was given the option of surrendering his cell phone or being suspended and Z.G. chose to be suspended.

{¶ 5} About ten minutes after Z.G. left the building, Gaines arrived at the school. Gaines immediately came up the stairs and saw Phelps standing behind a glass window and locked doors. The upstairs of the school is where the classrooms are located. Phelps instructed Gaines to go downstairs to check in at the office as per the normal protocol. He testified that instead he was met with "profanity and, you know, more profanity." He described that Gaines was becoming increasingly irate. For the next six or seven minutes, Gaines yelled profanities and hit the window. Phelps described that Gaines was hitting the

2.

window so hard that he was worried it was going to break.  The commotion alerted all the students, who came to their classroom doors to see what was going on.

{¶ 6} After those few minutes, the principal went down the back stairway and Gaines went down the main stairway to meet in the office.  Phelps followed Gaines.  When he arrived in the office, a shouting match was already occurring between the principal and Gaines.  Phelps testified that Gaines was asked to leave the premises, but she did not do so right away.  She only left after she knew that the police were being called.

{¶ 7} On cross-examination, Phelps testified that he previously had a few "run-ins" with Z.G., including an allegation that Phelps called Z.G. an inappropriate name.  At the beginning he did not have a good relationship with Z.G., but he testified that it "got better" towards the end of the year.

{¶ 8} Eaton, the assistant principal, testified next.  Eaton stated that she heard over the walkie-talkie that Gaines had entered the building and wanted to see her.  Eaton was instructed to stay in her office and not come meet Gaines for fear that it would escalate the situation.  Eaton did not see Gaines, but she heard Gaines loudly asking where she was and asking to see her.  Eaton did not believe that Gaines was cursing, but she heard Gaines being loud and hitting the glass window.  While this was going on, Eaton also heard the classroom teachers telling their students to stay in their seats, informing them not to get up and that everything is fine. Eaton testified that after the incident, one or two students wanted to call their parents and go home for the day.

3.

{¶ 9} Finally, the City called Toledo Police Officer Scott Histed. Histed responded to the scene, but by that time Gaines had already left.

{¶ 10} After the City rested, Gaines moved for a directed verdict of acquittal, which the trial court denied.

{¶ 11} Gaines then testified in her own defense. She stated that on the morning of February 1, 2024, Z.G. called her to come pick him up because Eaton was demanding that he could not come into the school unless he turned in a blue iPhone, which he did not have. When Gaines arrived, she asked to speak with Eaton, but Eaton was not available. She then left the building and tried to call the school to speak with "someone of power." She testified that she was already outside of the school when the police arrived.

{¶ 12} Gaines was adamant that she did not cause a disruption at the school. She stated that she did not touch anyone at the school, did not physically abuse anyone, and did not do anything to cause a "major disruption." She denied yelling or banging on the glass, and she stated that Phelps was lying about her conduct. She maintained that she simply went upstairs, asked to speak with Eaton, and when Eaton did not appear went downstairs and talked to the principal. She recounted the conversation as:

> She had said to me if he doesn't turn in the blue iPhone, he cannot come to school. He keeps sneaking phones in here. And I said he does not have a blue iPhone, he never has, so there is nothing that he can turn in. All I want for my son to do is to finish school so he can graduate, because he only had a couple months left. And she said if you're not satisfied with the school here, then why don't you remove your son. I said it's close to the end of the year, so he's too

4.

close to graduating. I asked them if he could just do his work at home. She said, well, you need to leave. And I said can my son stay at this school today. And she said if he doesn't have – doesn't turn in that blue iPhone, then no. I asked her why. She said to leave. I said, you know what, okay. And then I left to go to call the superintendent for somebody higher up.

Finally, she testified that she did not see any students in the classrooms, "except for the ones walking in," nor did she see anyone standing by the doors of the classrooms.

{¶ 13} Following the testimony and closing arguments, the trial court found Gaines guilty of both charges. It then informed the parties that,

Court would be inclined to order – the child's already gone from school. The Court would be inclined to give the defendant until June 17 to complete an Anger Management Program. If the Anger Management Program has been completed, then the Court would be inclined to order costs for the student (sic). . . .

So if she completes the anger management, come back here June 17, the Court would be inclined to order -- City wish to be heard in regards -- we'll set sentencing, but I guess I'd indicate that the Court's intention -- of course I would, obviously, hear the arguments from counsel at that time considering the defendant's counsel's argument as well the City's argument. But she would, at the very least, put herself in a far better position should she come back with completion of anger management. . . .

We're not sentencing today.

{¶ 14} At the sentencing hearing on June 17, 2025, Gaines produced a slip showing that she completed an anger management class. The trial court then sentenced her to pay court costs by August 20, 2025. Before Gaines left, the trial court informed her that she does have an automatic right to appeal, which must be

5.

done within 30 days, and that she has a right to an attorney, and if she cannot afford one, one will be appointed for her.

## II. Assignments of Error

{¶ 15} Gaines timely appealed the judgment of conviction from the Toledo Municipal Court, asserting two assignments of error for review:

> 1. The Trial Court errored when it failed to inform the Appellant of her appellate rights before ordering her to serve her sentence.

> 2. The trial court errored in finding the Appellant guilty as the verdict is against the manifest weight of the evidence.

## III. Analysis

{¶ 16} In her first assignment of error, Gaines argues that the trial court erred and violated Crim.R. 32(B) when it failed to inform her of her appellate rights before ordering her to serve her sentence. Crim.R. 32(B)(1) provides that "[a]fter imposing sentence in a serious offense that has gone to trial, the court shall advise the defendant that the defendant has a right to appeal the conviction."

{¶ 17} At the outset, Crim.R. 32(B)(1) applies to a "serious offense." Crim.R. 2(C) defines a "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Here, Gaines was convicted of a first-degree misdemeanor and a fourth-degree misdemeanor. The maximum periods of confinement for those offenses are 180 days and 30 days, respectively. R.C. 2929.24(A)(1) and (4). Gaines, therefore, has not been convicted of a serious offense, and Crim.R. 32(B) is not

6.

applicable. *State v. Hudson*, 2025-Ohio-5185, ¶ 10 (12th Dist.), citing *State v. Stroughter*, 2019-Ohio-935, ¶ 23 (7th Dist.); *State v. Bixby*, 2017-Ohio-7927, ¶ 5 (2d Dist.).

{¶ 18} Furthermore, the trial court in this case expressly advised Gaines of her right to appeal shortly after it sentenced her only to pay court costs. In her brief, Gaines nonetheless argues that the trial court erred because it did not inform her of her appellate rights until after she completed the anger management program. Gaines maintains that the anger management program was part of her sentence. The record reveals otherwise.

{¶ 19} At the end of the trial, the trial court directly stated that it was not sentencing Gaines at that time. It set the sentencing hearing for June 17, 2025, at which time it would consider the arguments of the parties, and if Gaines had already completed an anger management program, it would consider sentencing her only to pay the court costs. Thus, while the trial court incentivized Gaines to complete the program, it did not order her to do so. The only order from the trial court came at the sentencing hearing when it ordered her to pay court costs.

{¶ 20} Accordingly, completing an anger management program was not part of Gaines's sentence, and the trial court did not fail to advise her of her appellate rights. Gaines's first assignment of error is not well-taken.

{¶ 21} In her second assignment of error, Gaines argues that her convictions are against the manifest weight of the evidence.

{¶ 22} When reviewing a manifest weight claim,

7.

"[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 23} In this case, Gaines was convicted of disrupting school activity in violation of Toledo Municipal Code 537.16, which provides,

(a) No person shall assault, strike, threaten or menace a teacher, instructor, professor, person in charge of a class of students or any employee of any school, college or university, while in the performance of his duties, or disrupt, disturb or interfere with the teaching of any class of students, or disrupt, disturb or interfere with any activity conducted in a school, college, or university building, or upon the campus or grounds thereof, or in any public place, or improperly and unlawfully assault, strike, threaten, menace, follow, pursue or lay hands upon a student or other person in a school, college or university building, or upon the grounds or campus thereof, or upon the way to or from any school, college or university, or on the way to and from any school, college or university sponsored activity.

She was also convicted of criminal trespass in violation of R.C. 2911.21(A)(2), which states, "No person, without privilege to do so, shall . . . (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard."

8.

{¶ 24} Gaines does not argue that the alleged conduct does not constitute the offenses. Instead, she argues that the evidence does not prove that the alleged conduct occurred. She states that only one of the State's witnesses was in a position to observe her behavior. Further, she maintains that only one witness testified that some children might have been disturbed. Finally, she asserts that she left on her own after being asked.

{¶ 25} Upon review, this is not the exceptional case in which the evidence weighs heavily against the conviction. This is a matter of witness credibility. On the one hand, Phelps and Eaton testified that Gaines was yelling and banging on the window glass in such a manner that it disrupted the classrooms and caused the students to try to look out to see what was happening. Phelps also testified that Gaines did not leave school grounds when asked and only left once she knew the police had been called. On the other hand, Gaines testified that she did not yell or hit the glass but simply went upstairs to talk to Eaton, and when Eaton was not there, she went downstairs to talk to the principal. During the conversation with the principal, she was asked to leave twice in a matter of seconds, following which she left to call the superintendent.

{¶ 26} Weighing the evidence and considering the credibility of the witnesses, the trial court did not clearly lose its way and create a manifest miscarriage of justice when it believed Phelps and Eaton's version of the events. Persuasive to this court is the fact that the situation escalated within a matter of minutes to where the principal felt compelled to call the police. The principal's

9.

response would be irrational if Gaines were calmly seeking to discuss the issue as she suggests. Instead, this court, like the trial court, finds it more believable that Gaines was acting in the manner described by Phelps and Eaton.

{¶ 27} Accordingly, Gaines's convictions are not against the manifest weight of the evidence. Her second assignment of error is not well-taken.

### IV. Conclusion

{¶ 28} For the foregoing reasons, the judgment of the Toledo Municipal Court is affirmed. Gaines is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgement affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J.
_____
                                    JUDGE

Myron C. Duhart, J.
_____
                                    JUDGE

Charles E. Sulek, J.
CONCUR.                             JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.